UNITED STATES DISTRICT COURT
FOR THE
DISTRICT OF VERMONT

Yetha I. Lumumba,

    Plaintiff,

    v.                                         Civil Action No. 2:13-cv-69

Jason Marquis, Cleon Hunter,
Robert P. Berthiaume, Northern
State Correctional Facility,

    Defendants.

## REPORT AND RECOMMENDATION
(Docs. 10, 13)

    Plaintiff Yetha I. Lumumba brings this action *pro se*, pursuant to 42 U.S.C. § 1983, against Defendants—fellow inmate Cleon Hunter, Vermont Department of Corrections ("DOC") officials Jason Marquis and Robert Berthiaume, and the Northern State Correctional Facility. (Doc. 4.) Lumumba claims that Hunter assaulted him with a rock, while the other Defendants failed in their responsibility to protect him from the assault. Lumumba has since filed what he dubs a "Verified Complaint" (hereafter "Amended Complaint") in which he names Hunter as the sole defendant. (Doc. 15 at 1.) Prior to the filing of the Amended Complaint, both Hunter (Doc. 10) and Berthiaume and Marquis (Doc. 13) filed Motions to Dismiss.

    For the reasons that follow, I recommend that Hunter's Motion to Dismiss be GRANTED and Marquis and Berthiaume's Motion to Dismiss be DENIED AS MOOT.

## Facts and Procedural Background

For the purposes of deciding the pending motions, all factual allegations in the Complaint will be accepted as true.[1]

Vermont inmate Yetha I. Lumumba claims that his cellmate, Cleon Hunter, assaulted him in their shared cell at the Northern State Correctional Facility ("NSCF") on the morning of November 7, 2011. That morning, Hunter awoke earlier than Lumumba and began cleaning their cell. (Doc. 4 at 5.) The noise from the cleaning, as well as Hunter's use of the television, woke Lumumba and he began to help clean. (*Id.*) At 7:00 a.m., Lumumba sat down to watch his "usual show" on television when he claims that Hunter hit him with a "huge p[ie]ce of rock on the back of [the] head" and continued to strike him repeatedly. (*Id.*) Lumumba was, by his description, rendered "defen[se]less" after being "stunned from the first hit," resulting in further blows to his head, hands, and ears. (*Id.* at 6.) By this point, his entire body was "numb" and "shaking." (*Id.*) By the end of the attack, Lumumba was "overwhelmed[,] . . . couldn't breathe, couldn't see for the tears clouding [his] vision, [and] couldn't believe how much it hurt." (*Id.*) Lumumba describes Hunter as "a very dangerous inmate" who, by this attack, "tried to kill [him]." (*Id.*)

In his Complaint, Lumumba notes that there were "probably" NSCF officials "posted outside the door and other[s] beyond the cellroom," but none of them reacted to his calls for help. (*Id.* at 8.) Lumumba singles out DOC official Robert Berthiaume, who "resisted" unlocking the cell door and "stood by the door observing [Lumumba] crying[] and yelling for help." (*Id.* at 6.) Lumumba describes Berthiaume as "extremely helpless" insofar as he

---

[1] The factual allegations in the Complaint and Amended Complaint, set out in a typewritten four-page factual narrative, are identical. (Doc. 4 at 5-8; Doc. 15 at 5-8.)

merely stood outside the cell and gave "orders through the door's window while [Hunter] still had a p[ie]ce of rock in [his] possession to str[ike] again." (*Id*.) Berthiaume "refused to unlock the cell[]room door until after he had given all orders to make [Lumumba] kneel on the floor." (*Id*. at 7.) In an effort "[t]o cover up his negligence," Berthiaume "tried to blame [Lumumba] for fighting." (*Id*. at 8.)

Lumumba further claims that, on some unspecified date before the alleged attack, he requested that Hunter be removed from his cell. (Doc. 15 at 1.) DOC official Jason Marquis allowed the transfer, but, after a subsequent complaint against Hunter by his new cellmate, Hunter was soon returned to Lumumba's cell. (*Id*.) Marquis told Lumumba "that he had no choice." (*Id*. at 2.)

Lumumba filed his Complaint on May 7, 2013 (Doc. 4), which he subsequently amended on July 18, 2013 (Doc. 15.)[2] Although the original Complaint lists Marquis, Berthiaume, and NSCF as Defendants (Doc. 4 at 1), the Amended Complaint identifies Hunter as the sole Defendant (Doc. 15 at 1). In the Amended Complaint, Lumumba claims that Hunter's actions "violated the U.S. Constitutional Bill[] of Rights" (Doc. 15 at 1), as well as a number of federal criminal statutes—18 U.S.C. §§ 113(a)(1)-(3), 1791(a)(2)—which prohibit assault "within the special maritime and territorial jurisdiction of the United States" and the possession of contraband in prison. (Doc. 15 at 2.) Additionally, Lumumba cites Hunter's "breach of the covenant of quiet enjoyment" as well as his "intentional

---

[2] The Amended Complaint also includes a number of documents offered in support of Lumumba's claims, primarily letters from Vermont attorneys and government officials in response to Lumumba's inquiries, documentation of the NSCF disciplinary process, as well as Lumumba's grievances and appeals. (Docs. 15-1, 15-2.) Among these documents is a narrative written by Berthiaume regarding the assault. (Doc. 15-1 at 11-12.) Berthiaume states that he spoke with Hunter, who told him that he "was sick of [Lumumba] stealing his belongings and creating threats towards him." (Doc. 15-1 at 12.) Hunter also told Berthiaume that Lumumba "hit him in the face during the incident." (*Id*.)

3

infliction of emotional distress." (Doc. 15 at 2-3.) For relief, Lumumba seeks: a declaratory judgment, a temporary restraining order "ordering defendant to immediately cease and discontinue any effort to illegally assault the Plaintiff," a "preliminary and permanent injunction that defendant must discontinue any effort to illegally be around the Plaintiff," "compensatory and monetary damages," and costs associated with the litigation. (Doc. 15 at 3.)

In response, Defendant Hunter filed a Motion to Dismiss (Doc. 10), as did Defendants Berthiaume and Marquis (Doc. 13).[3]

---

[3] The pending Motions to Dismiss were filed in relation to the original Complaint, which was then amended (after the filing of the pending motions). While I recognize that the Amended Complaint was filed outside the twenty-one day window for the filing of amendments "as a matter of course," Fed. R. Civ. P. 15(a)(1), and without Defendants' consent or leave to amend, Fed. R. Civ. P. 15(a)(2), I accept Lumumba's filing of the Amended Complaint given his status as a *pro se* litigant and the fact that the rule notes that leave (if sought) should be "freely give[n], Fed. R. Civ. P. 15(a)(2). *See Washington v. Reilly*, 226 F.R.D. 170, 171 (E.D.N.Y. 2005) (forgiving procedural defects in filing of amended complaint by *pro se* litigant); *Bristol Village, Inc. v. Louisiana-Pacific Corp.*, 916 F. Supp. 2d 357, 362 (W.D.N.Y. 2013) (construing late filing of amended complaint as a request for leave to file an amended complaint and granting that request); *Little v. Nat'l Broad. Co., Inc.*, 210 F. Supp. 2d 330, 372 (S.D.N.Y. 2002) (noting that "courts have agreed to consider an amended complaint served without judicial permission as long as the court would have granted leave to amend if it had been sought and none of the parties would be prejudiced by allowing the change"); *see also* 6 Charles Alan Wright et al, Federal Practice and Procedure Civ. § 1484 (3d ed. 2013) ("Permitting an amendment without formal application to the court under these circumstances is in keeping with the overall liberal amendment policy of Rule 15(a) and the general desirability of minimizing needless formalities."). I also note that Defendants have not moved to strike the amended pleading.

Although the motions predate the Amended Complaint, when "a plaintiff amends its complaint while a motion to dismiss is pending . . . [a] court then has a variety of ways in which it may deal with the pending motion, from denying the motion as moot to considering the merits of the motion in light of the amended complaint." *In re Colonial Ltd. P'ship Litig.*, 854 F. Supp. 64, 80 (D. Conn. 1994). Here, as the Amended Complaint is a nearly-verbatim recitation of the original Complaint, offers absolutely no new facts that would affect an assessment of the merits, and differs primarily in its listing of named Defendants and prayer for relief, I opt to consider the merits of the pending motions using the facts as alleged in both versions of the complaint and the listing of parties present in the Amended Complaint.

**Discussion**

Title 42 U.S.C. § 1983 provides a civil claim for damages against "[e]very person who, under color of any statute . . . of any State . . . subjects, or causes to be subjected, any citizen . . . to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws . . . ." 42 U.S.C. § 1983. To succeed on a § 1983 claim, a plaintiff must allege: "(1) the defendant acted under color of state law; and (2) as a result of the defendant's actions, the plaintiff suffered a denial of h[is] federal statutory rights, or h[is] constitutional rights or privileges." *Annis v. County of Westchester*, 136 F.3d 239, 245 (2d Cir. 1998). "Section 1983 itself creates no substantive rights; it provides only a procedure for redress for the deprivation of rights established elsewhere." *Sykes v. James*, 13 F.3d 515, 519 (2d Cir. 1993) (citing *City of Oklahoma City v. Tuttle*, 471 U.S. 808, 816 (1985)); *see also Albright v. Oliver*, 510 U.S. 266, 271 (1994).

**I.    Motion to Dismiss Legal Standard**

To survive a motion to dismiss pursuant to Fed. R. Civ. P. 12(b)(6), a complaint must "provide the grounds upon which [its] claim rests." *ATSI Commc'ns, Inc. v. Shaar Fund, Ltd.*, 493 F.3d 87, 98 (2d Cir. 2007). A plaintiff must also allege "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007); *see also* Fed. R. Civ. P. 8(a)(2) (pleading must contain a "short and plain statement of the claim showing that the pleader is entitled to relief"). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). As described by the Supreme Court in *Iqbal* and *Twombly*, this does

not require a plaintiff to provide "detailed factual allegations" to support his claims, but the "[f]actual allegations must be enough to raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 555.  The plaintiff must allege sufficient facts to show "more than a sheer possibility that a defendant has acted unlawfully." *Iqbal*, 556 U.S. at 678.  If the plaintiff "ha[s] not nudged [his] claims across the line from conceivable to plausible, [his] complaint must be dismissed." *Twombly*, 550 U.S. at 570.

In assessing the adequacy of the pleadings, a court must accept all factual assertions as true and draw all reasonable inferences in favor of the plaintiff.  *See Wilson v. Merrill Lynch & Co., Inc.*, 671 F.3d 120, 128 (2d Cir. 2011); *ATSI Commc'ns*, 493 F.3d at 98.  A complaint is properly dismissed, where, as a matter of law, "the allegations in [it], however true, could not raise a claim of entitlement to relief." *Twombly*, 550 U.S. at 558. Conversely, this presumption of truth "is inapplicable to legal conclusions," and therefore the court need not credit "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements." *Iqbal*, 556 U.S. at 678; *see also Faber v. Metropolitan Life Ins. Co.*, 648 F.3d 98, 104 (2d Cir. 2011) ("We are not . . . bound to accept conclusory allegations or legal conclusions masquerading as factual conclusions" (internal quotation omitted)).

The question on a Rule 12(b)(6) motion to dismiss "'is not whether a plaintiff will ultimately prevail but whether the claimant is entitled to offer evidence to support the claims'" raised in the complaint.  *Villager Pond, Inc. v. Town of Darien*, 56 F.3d 375, 378 (2d Cir. 1995) (quoting *Scheuer v. Rhodes*, 416 U.S. 232, 236 (1974)).  "[T]he purpose of Federal Rule of Civil Procedure 12(b)(6) 'is to test, in a streamlined fashion, the formal

sufficiency of the plaintiff's statement of a claim for relief without resolving a contest regarding its substantive merits,'" and without regard for the weight of the evidence that might be offered in support of the claims. *Halebian v. Berv*, 644 F.3d 122, 130 (2d Cir. 2011) (quoting *Global Network Commc'ns, Inc. v. City of New York*, 458 F.3d 150, 155 (2d Cir. 2006)). In essence, the question is whether some plausible narrative supports the plaintiff's claim such that the case merits discovery; the Federal Rules of Civil Procedure "do[] not unlock the doors of discovery for a plaintiff armed with nothing more than conclusions." *Iqbal*, 556 U.S. at 678-79.

In cases involving a *pro se* plaintiff, the Court must construe the complaint "liberally," *Harris v. Mills*, 572 F.3d 66, 72 (2d Cir. 2009), by "reading such submissions 'to raise the strongest arguments they suggest.'" *Bertin v. United States*, 478 F.3d 489, 491 (2d Cir. 2007) (quoting *Burgos v. Hopkins*, 14 F.3d 787, 790 (2d Cir. 1994)). "This policy of liberally construing *pro se* [complaints] is driven by the understanding that '[i]mplicit in the right of self-representation is an obligation on the part of the court to make reasonable allowances to protect *pro se* litigants from inadvertent forfeiture of important rights because of their lack of legal training.'" *Triestman v. Fed. Bureau of Prisons*, 470 F.3d 471, 475 (2d Cir. 2006) (quoting *Traguth v. Zuck*, 710 F.2d 90, 95 (2d Cir. 1983)). In assessing *pro se* complaints challenged by Rule 12(b)(6) motions to dismiss, courts "apply[] a more flexible standard to evaluate their sufficiency than we would when reviewing a complaint submitted by counsel." *Lerman v. Bd. of Elections in City of N.Y.*, 232 F.3d 135, 140 (2d Cir. 2000). "This is particularly so when the *pro se* plaintiff alleges that h[is] civil rights have been violated." *Sealed Plaintiff v. Sealed Defendant*, 537 F.3d 185, 191 (2d Cir. 2008).

7

Nonetheless, even *pro se* litigants "remain subject to the general standard applicable to all civil complaints under the Supreme Court's decisions in Twombly and Iqbal." *Brickhouse v. City of New York*, No. 09 CIV. 9353(NRB), 2010 WL 3341845, at *2 (S.D.N.Y. Aug. 16, 2010).

## II. Hunter's Motion to Dismiss (Doc. 10)

In his Motion, Hunter "disputes[s]" the various factual allegations set out in Lumumba's Complaint, notes that Lumumba "attacked [him] and [he] defended [him]self," and maintains that Lumumba's "action should also be dismissed." (Doc. 10 at 1-2.)

Lumumba's claims against Hunter must fail. Hunter, like Lumumba, is a Vermont prisoner. He is a not a government employee or actor, and there is nothing to suggest otherwise in either version of the complaint. Proving that a Defendant "acted under color of law" is an essential element of a claim such as Lumumba's that is brought pursuant to 42 U.S.C. § 1983. *See Adickes v. Kress & Company*, 398 U.S. 144, 150 (1970). This comports with the purpose of § 1983, which is "to deter state actors from using the badge of their authority to deprive individuals of their federally guaranteed rights and to provide relief to victims if such deterrence fails." *Wyatt v. Cole*, 504 U.S. 158, 161 (1992). Because Lumumba has not alleged an essential element of his claims against Hunter, his claims under § 1983 must fail as a matter of law. *See Simonton v. Tennis*, 437 F. App'x 60, 62 (3d Cir. 2011) (dismissing § 1983 claim against fellow inmate); *see also Figalora v. Smith*, 238 F. Supp. 2d 658, 661 (D. Del. 2002); *Hutchinson v. Jefferson Cnty. Jail*, 242 F.3d 375 (8th Cir. 2000) (per curiam); *Lacy v. Berge*, 921 F. Supp. 600, 611 (E.D. Wis. 1996); *Barnes v. Childs*, 63 F.R.D. 628, 629-30 (N.D. Miss. 1974).

Furthermore, Lumumba cites a variety of federal criminal statutes in support of his claim against Hunter, none of which create private rights of action. Generally, violations of the criminal code may not serve as the basis for a civil cause of action unless the statute includes an express or implied private right of action. *See Cort v. Ash*, 422 U.S. 66, 79 (1975); *Hill v. Didio*, 191 F. App'x 13, 14 (2d Cir. 2006) ("A private individual may bring suit under a federal [criminal] statute only when Congress specifically intended to create a private right of action"); *see also Seabury v. City of New York*, No. 06-CV-1477 (NGG), 2006 WL 1367396, at *6 n.7 (E.D.N.Y. May 18, 2006) (holding that most sections of the criminal code may only be prosecuted by the government). Lumumba specifically cites subsections of 18 U.S.C. § 113, which define certain acts (various permutations of assault) as criminal offenses. This provision "do[es] not create a private cause of action." *Risley v. Hawk*, 918 F. Supp. 18, 21 (D.D.C. 1996), *aff'd*, 108 F.3d 1396 (D.C. Cir. 1997). The other section Lumumba refers to, 18 U.S.C. § 1791(a)(2), criminalizes an inmate's possession of a "prohibited object" within a federal prison facility, and thus plainly does not create a private right of action.[4] Crimes are prosecuted by the government, not private parties.

Assuming Lumumba's remaining claims could be construed as matters of state law, he cannot invoke this Court's diversity jurisdiction pursuant to 28 U.S.C. § 1332. In either version of his complaint, Lumumba has failed to mention where either he or Hunter were

---

[4] The section in question makes it a criminal offense for an "inmate of a prison" to obtain a prohibited object, defining "prison" as "a Federal correctional, detention, or penal facility or any prison, institution, or facility in which persons are held in custody by direction of or pursuant to a contract or agreement with the Attorney General." 18 U.S.C. § 1791(d)(4). Seeing as how Lumumba is an inmate in the custody and control of the Vermont DOC incarcerated in a Vermont facility, NSCF does not come within the definition of a "prison" as contemplated by the statute. Thus, even if § 1791 supported a private right of action, which it does not, Lumumba's claim would still be unavailing—the statute does not prohibit possession of contraband by inmates of *state* prisons (unless, unlike Lumumba, the individual is housed at such a facility "pursuant to a contract or agreement with the Attorney General").

9

domiciled prior to incarceration and, most importantly, has not alleged that the parties are citizens of different states. "[A]n individual's citizenship is determined by domicile. A party's domicile is established at the time a case is filed, and it is determined by the party's place of residence and his intent to remain in that place indefinitely." *Fermin v. Moriarty*, No. 96 Civ. 3022(MBM), 2003 WL 21787351, at *2 (S.D.N.Y. Aug. 4, 2003) (citations omitted). "It is well-established that a prisoner does not acquire a new domicile when he is incarcerated in a state different from his previous domicile . . . the prisoner retains his pre[-]incarceration domicile." *Id*. Because "[t]he plaintiff bears the burden of proving subject[-]matter jurisdiction by a preponderance of the evidence," *Aurecchione v. Schoolman Transp. Sys. Inc.,* 426 F.3d 635, 638 (2d Cir. 2005), and Lumumba has not alleged the domicile of both parties, I cannot conclude that diversity exists such that exercise of jurisdiction over any state law claims would be proper. *See Linardos v. Fortuna*, 157 F.3d 945, 947 (2d Cir. 1998) (party invoking court's jurisdiction "must allege a proper basis for jurisdiction in his pleadings"); *Advani Enters., Inc. v. Underwriters at Lloyds*, 140 F.3d 157, 160 (2d Cir. 1998); *Jenkins v. Virgin Atlantic Airways, Ltd.*, 46 F. Supp. 2d 271, 273 (S.D.N.Y. 1999) (noting that "allegations of citizenship . . . must be apparent from the face of the pleadings" and dismissing *pro se* complaint for failure to allege domicile of defendant and establish court's diversity jurisdiction).

Accordingly, I recommend that Hunter's Motion to Dismiss (Doc. 10) be GRANTED.

### III.     Marquis and Berthiaume's Motion to Dismiss (Doc. 13)

Marquis and Berthiaume have moved to dismiss for a variety of reasons, chiefly arguing that any Eighth Amendment claim for their failure to protect Lumumba from Hunter must fail on its merits because there is no allegation that either official was aware of, and disregarded, a risk to his safety.[5]  I need not go so far.

As mentioned, Lumumba filed an Amended Complaint after the filing of both Motions to Dismiss, and the Amended Complaint identifies only Hunter as a Defendant. Specifically, Lumumba changed the caption in his Amended Complaint, and, in its section identifying the parties, listed "Defendant, Cleon Hunter."  (Doc. 15 at 1.)  Given that they are not identified as defendants in Lumumba's Amended Complaint, Marquis and Berthiaume (as well as NSCF) are no longer parties to the case.  "It is well established that an amended complaint ordinarily supersedes the original, and renders it of no legal effect." *Shields v. Citytrust Bancorp, Inc.*, 25 F.3d 1124, 1128 (2d Cir. 1994) (internal quotation omitted).

Motions to dismiss filed by non-parties should be denied as moot.  *See Pope Invs. II, LLC v. Deheng Law Firm*, No. 10 Civ. 6608(LLS), 2012 WL 3526621, at *8 (S.D.N.Y. Aug.15, 2012).  In light of their absence from the Amended Complaint, Marquis and

---

[5] Although at the outset of this Motion only Marquis and Berthiaume are identified as the moving parties (Doc. 13 at 1), later in the document  NSCF also moves to dismiss, arguing that it is not a "person" as contemplated by 42 U.S.C. § 1983 (Doc. 13 at 7-8).  The proper identification of the parties to this Motion is immaterial, however, as the end result is the same—all three parties (Marquis, Berthiaume, and NSCF) should be terminated as parties, given their deletion from the Amended Complaint, and the Motion (Doc. 13) should be denied as moot.

11

Berthiaume should be terminated as defendants, and their Motion to Dismiss (Doc. 13) should be DENIED AS MOOT.[6]

## Conclusion

For the reasons stated, Hunter's Motion to Dismiss (Doc. 10) should be GRANTED and the case should be DISMISSED without prejudice, and Marquis and Berthiaume's Motion to Dismiss (Doc. 13) should be DENIED AS MOOT.

Dated at Burlington, in the District of Vermont, this 27th day of August, 2013.

/s/ John M. Conroy  
John M. Conroy  
United States Magistrate Judge

Any party may object to this Report and Recommendation within fourteen days after service thereof, by filing with the Clerk of the Court and serving on the Magistrate Judge and all parties, written objections which shall specifically identify those portions of the Report and Recommendation to which objection is made and the basis for such objections. *See* 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 6(a), 6(d), 72(b)(2); L.R. 72(c). Failure to timely file such objections "operates as a waiver of any further judicial review of the magistrate's decision." *Small v. Sec'y of Health and Human Servs.*, 892 F.2d 15, 16 (2d Cir. 1989).

---

[6] *Pro se* complaints "should not be dismissed without granting leave to amend *at least once*." *Pangburn v. Culbertson*, 200 F.3d 65, 70 (2d Cir. 1999) (emphasis added). Having already granted Lumumba leave to amend by his filing of an Amended Complaint, *see supra* n. 3, this Court is not obliged to afford Lumumba another opportunity to further amend his complaint. *See Abascal v. Hilton*, No. 9:04-CV-1401 (LEK/GHL), 2008 WL 268366, at *8 (N.D.N.Y. Jan. 30, 2008) ("Of course, granting a *pro se* plaintiff an opportunity to amend is not required where the plaintiff has already been given a chance to amend his pleading."), *aff'd*, 357 F. App'x 388 (2d Cir. 2009); *see also Coleman v. brokersXpress, LLC*, 375 F. App'x 136, 137 (2d Cir. 2010). In any event, repleading would be futile given the substantive problems with Lumumba's cause of action. Further amendment would not cure these defects.